UPSFreight v. National Union Fire Mr. Lebekoff, morning. Morning, Your Honor. If it pleases the Court, because this matter involves cross appeals, I'd better save a couple of minutes for rebuttal. All right. Because my opponent assures me he's not going to come up with anything too startling, I'll only reserve two minutes. All right. Again, I represent the plaintiff, appellant, overnight transportation. Is there a choice of law issue here? Well, I would submit that the laws that could apply would be the laws of either Michigan or possibly Pennsylvania. However, there's no material difference between the guiding principles in either jurisdiction. Our research indicates perhaps maybe there is a difference. For example, under Michigan law, the insurer, the insurance company, would have the burden of proving that the claim falls outside the scope of coverage. Well, if there were exclusionary language involved, and if the insurance company were relying on such exclusionary language under the law of Michigan or Pennsylvania or any of the other But I'm talking solely about not an exclusionary clause, but the Sixth Circuit said in Cincinnati Insurance Company that under Michigan law, the insurer has the burden of showing that a specific tendered claim is not covered under its policy. That's different than an exclusion. That may well be under Michigan law, and that would be correct, and I would certainly urge the Court to view the case quite that way. And Mingus Creek is a Michigan case decided under Michigan law, though, and that case said you've got to look at the term premises as a term of art, and you've got to look at the lease. Well, Mingus Creek was a decision of the Court of Appeals for the Sixth Circuit, presumably applying Michigan law. If one carefully reads that opinion, I suggest that the Court of Appeals doesn't cite any Michigan case that actually supports its reasoning or its conclusion. I'd go on to say that because the insurance policy language, which must be the poll star in the analysis, was so totally different in the Mingus Creek case from the insurance policy language in the additional insured endorsement form in this case, that Mingus Creek provides very little elimination. Well, Mingus Creek talks about lease premises. This case talks about lease premises or operations. Is that what you're trying to say? That's happenstantial and of very little consequence. In the Mingus Creek case, the coverage language said there's coverage. Wait a minute. You're saying that the fact that your deal had the word operations in it is happenstantial and of little consequence? No, no. I suggest that the fact that both cases dealt with a lease is in and of itself of little consequence. The language difference in the policy is of critical importance. The coverage endorsement in Mingus Creek limited the coverage to premises owned, rented to, or used by the policyholder. In our case, the coverage endorsement says arising out of operations or premises owned by or rented to. So clearly the Mingus Creek doesn't involve coverage for operations. In our case, clearly the coverage does extend to matters arising out of the operations of the insured. And here where we're talking about a truck driver who's on the business of C.C. Eastern, appears at the facility because he's on the business of C.C. Eastern, is trying to traverse the area from the lease dock area to the lease office area of C.C. Eastern because his business for C.C. Eastern requires him to make that journey and falls in the process. It's unimaginable that the district court can conclude that that didn't arise out of the operations of C.C. Eastern. The liability has to arise out of the operations. That's the language of the insurance clause, right? Yes. I think the district court mistakenly— How does the liability arise out of him simply falling? Because the liability arises out of the fall, and the fall occurred because he's, one, there, and two, traversing the area he's traversing because he's engaged in the operations of C.C. Eastern. He's not just happens to be there. He's there because he's doing the business of the lessee. How the district court could conclude that this accident didn't arise out of those operations is unimaginable, I would submit. Again, that totally distinguishes the Mingus Creek case. And we cite 15 or 20 decisions of other courts that have looked at similar problems. There's not another court that has recognized that an accident occurred solely because of the operations of the named insured that has yet come to the conclusion that the coverage was not provided by similar additional insured endorsement forms. The additional insured endorsement states that the, quote, the insurance provided will not exceed the coverage and or limits required by the said contract or agreement. In other words— Indeed it does. I would suggest to the court that the proper way to read that language is that the term coverage means types of coverage, not the precise scope of coverage. But it doesn't make any difference because if one resorts to the insurance coverage provision in the lease, it's virtually coextensive with the language of the additional insured coverage endorsement anyway. It, too, requires the trucking company to provide coverage for its business operations and—I stress the word and—matters involving the premises leased to the trucking company. And I would suggest to the court that if one looks at the parallel wording in the additional insured coverage endorsement form, it's virtually coextensive with that provision of the lease. Isn't the insurance coverage required by the lease intended to cover the indemnification obligation that C.C. Eastern undertook under the lease? And doesn't that say that anything to the contrary notwithstanding, C.C.'s covenant to indemnify landlord and save it harmless shall not include landlord's negligence or misconduct? Let me answer the question directly. No, it is not intended to cover the indemnity obligation. Let me second say that it's the language of the insurance policy that governs, not the indemnity provision of the lease. As this court recognized when I was a young man 30 years ago in the transport indemnity case, there are two different agreements. They have to be viewed differently. The insurance provides coverage that the policy says it provides. What the indemnity clause may say is of no moment whatsoever unless the insurance policy says that it limits coverage to the scope of the indemnity. That language is absolutely absent from this insurance policy. So the scope of the indemnity is of no consequence whatsoever in the coverage analysis. And I might add, if the indemnity and the insurance embrace the same things, why do we need the insurance? We've got the indemnity. Insurance is to make sure that they can indemnify you. Well, but there are other provisions in the insurance clause that require the trucking company to afford itself insurance. If it has insurance and there's indemnity, why do we need additional insured coverage? The additional insured coverage is obviously intended to provide coverage directly to the additional insured and as governed by the terms of the insurance policy, not the indemnity clause. To confuse the two is a fundamental error. I thought if you look at the magistrate judge's report and recommendation here, it said that we couldn't or courts should not get to the indemnity provision until there is a judgment of a state court. I would agree with that on conceptual grounds. However, when we're looking to declare the scope of insurance coverage, in this particular case, there's just no conceivable way that liability could be imposed on any ground not embraced by this additional insured coverage endorsement. The court could have declared that, although it may be premature to determine the ultimate coverage issue at this juncture. But the district court erred in construing the coverage way too narrowly and erred in cutting off the duty to defend obligation because of a summary judgment ruling rendered for the trucking company in the underlying case. Unless the court has other questions, I have nothing further to add. Well, we'll have you back on rebuttal, Mr. Lavakoff. Thank you very much. Thank you very much. Mr. Travis? Good morning. Good morning. May it please the court, I'm John Travis representing National Union Insurance Company of Pittsburgh, Pennsylvania. In addressing insurance coverage issues, it's helpful to bear in mind the goal in reviewing a policy of insurance is to reach a reasonable interpretation in keeping with the intent of the parties. One fundamental question, then, is whether it's reasonable and in keeping with the intent of CCEastern or CCE and its insurer, National Union, to afford overnight coverage in this case. We say no. The policy that was issued here says, any person or organization to whom you, that is the eastern, the lessee, becomes obligated to include as an additional insured under this policy as a result of any contract or agreement, but only with respect to liability arising out of your operations or premises owned by or rented to you. One could make a pretty good argument that the district court limited itself, as it said, to geography, that is to the premises, and didn't concern itself so much with the operations. If you get out of your truck at one of, let's say, Dock 8, and you have to walk across Dock 10 in order to get to the CC offices, why aren't you in the business about the operations of your employer, CCEastern? Well, Your Honor, that's the operations of overnight, if we're speaking about where the plaintiff fell in the dock that was not maintained by overnight. No, it says out of your operations, which is the lessee's operations. Your. Correct. Any person or organization to whom you, which is the lessee, become obligated, but only with respect to liability arising out of your operations, CCEastern's operations. The overnight is arguing that that's enough. We say it doesn't make any difference, operations or premises. The fundamental question is how firm or tenuous a connection need there be between the operation or premises of the named insured and the loss. Now, in this case. Didn't the district court focus on premises? The district court did. I submit, Judge Sirica, that it really doesn't make any difference, premises or operations. This particular area where the loss occurred was not under the control of CCEastern. So why does it make sense to burden CCEastern with this obligation? If CCEastern tractor trailer was pulling into dock 10 or loading dock number 10 and damaged it in the way it pulled in, then there would be coverage, right?  Because it would have arisen out of the operations of CCEastern. Certainly. All right, so now you have the CCEastern truck driver walking to go to the leased office space. How is that not arising out of the operations of CCEastern? It's too tenuous a link. And I would direct the court's attention to pages 22 through 24 of our initial brief. The question is whether the mere coincidence that the plaintiff's an employee of the named insured tenant is a firm connection or a tenuous connection. Hilton Hotel says no. Liberty Mutual says no. Shumway says no. And when Shumway points out that in the marketplace the reality is that insureds pay little or nothing for this additional insured endorsement. Because the risk assumed, first of all, is limited. And second, must be limited in keeping with the lesser of what's required by the coverage or limits of the lease. If you look to the lease, it says clearly in looking at and trying to interpret and ascertain the intent of the party, that CCEastern's liable for its operations and Overnight is liable for its operations. But what the lease says, it's at all times during the term of this lease, CCEastern agrees to keep in full force and effect broad form comprehensive liability and property damage policies. Including, which means that's a subset, contractual liability endorsements in covering their obligations under the lease. So that doesn't mean that's the whole picture. The whole picture then comes out in the insurance contract. The lease can't override the insurance contract anyway. It can't override the insurance contract, but because the insurance contract refers to the agreement, you must make reference to the agreement to ascertain the intent of the party. But even looking at the actual words of the agreement, it says including. So that doesn't mean that's the whole ball universe. That just means that could be a subset of the type of liability coverage that you might end up getting. I agree, Your Honor, but you have to also look at the additional insured endorsement that says the coverage afforded shall not exceed the lesser of the coverage and or limits required by the lease. And under the lease, the parties contemplate that CCEastern's responsible for what it can control for its operations and Overnight's responsible for what it can control in its operations. This plaintiff fell on property maintained by Overnight. CCEastern had no ability to do anything with respect to that. And you're saying that when you were asked by Judge Sirica and me, did the court focus on premises? The answer, yes. But the word operations is not different than premises. How is it not different? How are they one and the same? I think the determinative issue here is a rising out of and causation. I mean, Mr. Levikoff will say that this loss arose out of the operations and the premises of CCEastern. We say it didn't arise out of either because it happened in a place that was controlled by Overnight. It's almost like you're making a rising out of caused by. So if it was caused by the operations of Eastern, that's one thing. But he was arising out of means in connection with. And in connection with his duties as an employee of CCEastern, he was going to their office after he got out of his truck, and he happened to go across Dock 10. Well, that's one of the questions this Court need resolve. And certainly in the Meridian Neutral Insurance Company v. Continental Business Center case, the Third Circuit considered an issue similar to this. And the Court there interpreting Pennsylvania law says it's not strictly a but-for case. And the Meridian Court referred to another important Third Circuit case, U.S. Underwriters v. Goodville Mutual. And the Court there pointed out that if you're looking at this but-for test, you can devolve into struggling with the legal equivalent of angels and pinheads. And the Court said that not every incidental factor that arguably contributes to an accident is but-for cause. So it gets down to causation in large part. Is there a choice of law issue here? I mean, is there a difference between Pennsylvania law and Michigan law? We haven't perceived a significant difference, Judge Vinesky. In the Mingus Creek case, though, which interprets Michigan law, the Court there unquestionably held that you have to look at the lease because they're inextricably intertwined. So you can't ignore the lease, clearly under Michigan law. In that Mingus Creek case, we were dealing with a tenant walking from the premises of the insured tenant. The Court there, in ascertaining what was reasonable and in keeping with the intent of the parties, looked to the lease, which did not obligate the tenant to maintain the area where the plaintiff fell. I want to emphasize that the plaintiff there had just come from the tenant named insured store and then fell. That was not enough to trigger coverage for the landlord. In the Ersic case, the Pennsylvania Commonwealth Court suggested you don't need to concern yourself with the lease. You just look at the insurance policy. That's correct. But in Ersic, and I think that was an error, but that's what the Court of Appeals held in Ersic. But also in Ersic, the insurance policy indicated that the insured premises included the appurtenant wage. So where that person fell was the insured premises under that policy of insurance. So I think Ersic, for that reason, was properly decided. But I think the Court erred in not looking to the lease because, again, the gold standard is the intent of the parties. If the policy says you have to look at the lease, you have to look at the lease. But I just said when you look at the lease, the word including contractual liability endorsements covering CC's obligations under its lease is just part of the obligation that you have for insurance. It's not the whole thing. I agree with that, Your Honor. But if you look at the lease as a whole to ascertain the intent of CC Eastern and Overnight, I believe it's apparent looking at paragraphs 9 on maintenance, 11 on insurance, and the indemnity paragraph. Well, the one I quoted was the one on insurance, paragraph 11. Correct. And that is true, but that doesn't cover the whole waterfront of what the intent of the parties is with respect to the allocation of liability and indemnity. The Court should look at. What does maintenance in paragraph 9 have to do with insurance in paragraph 11? The entire agreement represents a statement of the intent of the parties as to who's obligated to do what. And I would also point out that the appellant's position is really inconsistent, and that's pointed out as well in the Mingus Creek case. Mingus Creek talks about coverage for liability arising out of premises. It doesn't even use the word operations. It doesn't. So, I mean, it seems like I understand you've got to say that operations and premises are much the same, but usually if you have extra words, they mean something extra. They mean something additional. Some other circumstances in which there would be coverage. And you're saying no, and I still don't understand why. I'm saying they're coextensive because under either circumstance, Overnight is arguing it arises out of the premises because they started on lease premises and were going to lease premises. It's arising out of the operations because the plaintiff was an employee of the named insured. We're saying it doesn't make any difference because it's too tangential, it's too tenuous, and it really doesn't arise out of either the operations or the premises. When would there be a circumstance that something would not arise out of the operations of C.C. Eastern? Other than this case? There might be numerous circumstances. Okay, you're right. When would something arise out of the operations? Suppose, and it's a very good question, Judge Ambrose, I'm not saying that it's strictly vicarious liability that's covered by this policy of insurance. Suppose, for example, C.C. Eastern had a fence with a dog in it for security purposes and the dog escaped and bit someone, and there was a lawsuit against C.C. Eastern and against Overnight. That circumstance would trigger coverage for both C.C. Eastern and Overnight because that loss arose out of the premises or operations of C.C. Eastern. Even though Overnight would be sued perhaps for active negligence, for not knowing about the dog, for harboring the dog, they knew or should have known, that would arise out of C.C. Eastern's operation. There would be coverage. Why is that substantially different from driving the truck? Because in this case, there is a mere happenstance that the plaintiff is an employee of C.C. Eastern. And the cases I've mentioned, the Shumway case, the Hilton Hotels case, the Liberty Mutual case, cited at pages 22 to 24 of our initial brief, say that's not enough. There has to be more than a tenuous connection between the loss, between the liability, as Judge Vinasky pointed out, and the duty to defend or indemnify. Very briefly with respect to the duty to defend, we believe that Judge McLaughlin looked at the wrong issue on that point in assessing whether there's a duty to defend. You look at the allegations against the party who is claiming coverage, not against the co-defendant. It was never alleged that the liability of Overnight arose out of C.C.E.'s operations. The liability of Overnight was because Overnight didn't maintain Dock 10 that collapsed. So it's always been the case, and certainly was established as a judicial matter when Judge Boza issued his ruling on November 18, 2005, that this loss had nothing to do with anything that C.C. Eastern did or didn't do. It was because Overnight didn't maintain its dock. The paragraph, the coverage, says, with respect to liability arising out of your, which would be C.C. Eastern's, operations. Correct. So why wasn't the employee missing something? The liability didn't arise out of the fact that he was an employee. Whether he was an employee or not doesn't make any difference in our estimation, Your Honor. I guess the argument would be that he would not have been crossing straightaway across Dock 10 were he not an employee of C.C. Eastern. Well, that's true. If he was not working that day for C.C. Eastern, if he was not driving his truck, if he was not getting out of his truck to go to its office there, he would not have gone across Dock 10. That's true, but that gets back to the point discussed by this Court. In Meridian Mutual and the U.S. Underwriters case, are we getting to a point of too tenuous a connection, and is that the equivalent of angels in pinheads? We say yes, and the cases we've pointed to indicate it doesn't make any difference whether the plaintiff was an employee or not. The liability doesn't arise out of that relationship. Now, was this argument made to the district court? Because you're right, district court did not rely on this, that argument you're now making, that the alleged liability arose supposedly out of UPS's operations. We've made that argument consistently from day one, Judge Amber. But the judge didn't? He didn't choose to articulate that in his oral statement, but he did grant a summary judgment, obviously. A couple of concluding points, if I may. We believe that Overnight's position is manifestly unreasonable. At page 17 of its reply brief, Overnight argues that it's entitled to coverage anywhere, not just on CCE's leased premises. In other words, Overnight believes that if Overnight causes injury anywhere to anyone in any way connected with the operations or business of CCE, it's entitled to coverage under CCE's policy. We believe that's an unreasonable interpretation. Also, this court in the Meridian case, should the court wish to look at that, pointed out that Overnight has the burden. Let me amend my hypothetical where you have the truck pulling in, it hits somebody, and there's a claim against Overnight and CCE in connection with that accident. Wouldn't your insurance coverage kick in then, duty to defend? Probably so, because that liability was caused by CCE. But there could be negligence on the part of Overnight as well. For example, if the area was not well lit, it wasn't part of the docks that had been leased. Could be. And Overnight does have its own insurance, and their insurance company is defending it in this case. We say that primary obligation. We haven't analyzed the other insurance issues. We believe that courts should make a reasonable allocation of risk that insurance companies in the marketplace, as pointed out by the Shumway case, recognize that an additional insured is entitled to some coverage, but not an overwhelming amount of coverage after all. And essentially, the landlord is responsible for the landlord's torts, and the tenant is responsible for the tenant's torts, getting back to the liability issue. And finally, Your Honor, I'd like to go back to the intent of the parties. That really is the gold standard for interpreting contracts. We don't believe that the intent of CCE or National Union, we can safely conclude, indeed, that their intent was not to cover CCE, not to cover Overnight for its own negligence. That's why Overnight purchased insurance. Are there any more questions? Mr. Travis, thank you very much. Thank you very much, Your Honor. Good. Mr. Levikoff? The gold standard is the language of the policy, and to the extent incorporated therein by the language of the policy, relevant terms in the lease. I'm satisfied the Court understands the language of both. I have nothing to add unless there are questions. I gather the argument from Mr. Travis, in part, is that there's nothing to restrict or to cabin this term operations, that it's just all expensive. Well, it's limited by the scope of what operations means. If there were an accident occurring three blocks down the street and a suit were brought against Overnight on some theory, if one were to conclude that the accident arose out of CCE's operations, then there would be coverage, and that's exactly what the parties bargained for in the lease. The insurance provision of the lease also uses the term business operations. So if it arises out of the business operations of the trucking company, it's embraced both by the insurance clause in the lease and by this endorsement. So, indeed, it's how broadly do you construe the coverage, how broadly do you construe the operations of CCE Street. And I would submit that's not the least bit unusual. If one thinks about what one would bargain for in a commercial lease of portions of a facility, leasing part to another entity that's going to come in and perform operations, possibly run people over with trucks, possibly hit the building, possibly hit a light pole, pull it in off the highway, there could be any number of claims that could arise out of the operations of the trucking company. And that's what this lease and its insurance clause and this insurance endorsement embrace in this situation. And, indeed, Judge Ambrose is absolutely correct. The district court here limited its analysis to a territorial question, premises. It found Mingus Creek convenient for that reason. But both Mingus and the district court's analysis overlooked the operations of CCE Street as an additional focus of coverage. Good. Any other questions? Good. Mr. Levikoff, thank you. The case was very well argued by both parties. Thank you. Thank counsel. Take it under advisement.